May it please the Court, Counsel, Joanna Hershey for the Superintendent in this matter. I'd like to reserve five minutes for my rebuttal. All right, thank you. Please be reminded, Counsel, that the time shown on the clock is your total time remaining. Thank you, Your Honor. Following Petitioner's convictions for attempted aggravated murder and first-degree robbery in the State Court, Petitioner filed a petition for habeas corpus relief in Federal Court. The Superintendent is appealing the resulting judgment on two bases. First, the petition was not timely, and the District Court erred in applying the doctrine of equitable tolling to allow that petition to move forward. Second, Petitioner failed to demonstrate that he was denied the effective assistance of Counsel, and the District Court erred by not providing the appropriate deference to the State Court decision that rejected that claim. I'd like to begin with the equitable tolling argument, if that's okay with the Court. The Superintendent's position is that Petitioner had the vast majority of the information that he needed to prepare his Federal petition once his State post-conviction claims were filed in State Court, which were about four years before the ultimate deadline in this case. But nevertheless, he chose not to begin working on his Federal petition until after the Oregon Supreme Court had denied his petition for review in that State Court proceeding. Well, it does not make sense. I mean, after all, until he knows that the Oregon State Court has not made a decision or the grounds upon which the decision were made, he doesn't know whether that decision is right or wrong and how to attack it in the Federal court. So shouldn't he wait until he finds out what the Oregon State Court is going to do before he starts working on his Federal petition? I would say two things in response to that. Ordinarily, yes, but when you know going into the situation that a large chunk of your statute of limitations has passed due to something that happened before you filed your State claims, that's an awareness that says, I should start working on this petition as soon as practically possible. And our position is that most of the information he needed, he could have gotten from his amended State post-conviction petition that had been prepared by an attorney for him, but at a minimum, he would have known that the State post-conviction trial court rejected his claims two years before he started working on his Federal petition. And then what was left was sort of the State appellate process. Now, of course, he wouldn't know what the resolution of those appeals would be, but most of the information you need just to file a petition and outline what your properly exhausted State claims are, he would have had available to him, and then he could have sort of filled in the gaps from the appellate process thereafter. Counsel, isn't that asking a lot from a pro se prisoner? It is asking some of the pro se petitioner, which is asking him to exercise reasonable diligence under the circumstances known to him at the time. That was my next question. Why wasn't it reasonably diligent to wait to see how the Oregon court ruled before starting on the petition? So reasonable diligence, you know, this is an equitable doctrine. It depends on the facts of each case. And here we know that the petitioner was well aware that the statute of limitations was ticking for those 10 months that he didn't have his criminal trial file. And a reasonable person in those shoes would think, wow, I'm going to be left with very little time at the end of this. I better start working now. Or a reasonable pro se prisoner could have thought, well, the statute is being told during all of this time, and so I won't be held accountable for that time. Yes, but that's true. But then they have to live with the consequences of not actually getting it done within the remaining time left. Counsel, may I ask you a question? You said the question of the determination of reasonable diligence is a factual question, right? The state, the district court found that reasonable diligence was, in fact, exercised. Are you telling us that that was clear error? Because that is the type of error which we have to consider under Hinkson v. USA. Is it clear error? Is it illogical, implausible, and not discernible from facts in the record? I submit to you that it was error. The standard of review on appeal is de novo review. You can review the facts in the same manner that the district court reviewed the facts in an equitable tolling issue. What case says that, that we review the factual determinations de novo? That would be astonishing. Okay, well, I don't have it right in front of me. But my position is that either way the district court erred in holding equitable tolling, both with the reasonable diligence question but also the extraordinary circumstances question. I know my sort of position with regard to each of these prongs is related. But our position is that the earlier delay that occurred in this case was not the cause of petitioner's late filing in his federal petition. And that is something that he has the burden to prove here. What he proved was that there was a very unfortunate circumstance he was faced with for 10 months before he filed his state petition. And we're not denying that that was a hard thing for him to deal with. However, he worked really diligently to get his criminal file and file a timely state petition. He was perfectly capable as a pro se petitioner to do that. Once that petition was filed and the clock stopped for him, he had the benefit of having an attorney hired who could hone down the issues in a state criminal case. He had a counseled petition in front of him that outlined all of those issues, the criminal procedure of his criminal case. And he could have started working on his petition, but he didn't. That just goes back to your argument that he should have been preparing his federal habeas while his state habeas was still pending. Yes. Didn't he have advice of his own counsel saying that he should wait? No, he did not have that. And advice of an attorney, the Supreme Court has held that that in and of itself is not a basis for granting equitable tolling. It is a pro se petitioner's duty to understand his deadlines, to understand what he needs to do to be able to file a timely petition. I mean, I know it may seem harsh, but that is how federal habeas works. There's a reason for these rules. But we have equitable tolling to relieve that harsh result, and that's why we're here. Right. And to determine whether or not, under the facts of this case, with all the unfortunate circumstances that you acknowledge, the petitioner acted with reasonable diligence. We have a state court, I mean, we have a district court decision that said, yes, he did. And you're asking us to say that that decision is clearly erroneous. Yes. But if you're not inclined to do that, we also have an argument that the district court erred on the merits. So I'd like to turn to that argument at this point, unless you have any other questions about the equitable tolling argument. The superintendent's position is that the state court decision was entitled to deference under AEDPA, and the district court erred in failing to provide the state court that deference. At the end of the day, there was a fundamental disagreement with how to view the facts in this case between the state post-conviction court and the district court. But a difference of opinion in how to view and weigh facts is not a basis for not exercising or not applying the deference owed to a state court decision under AEDPA. There is nothing in the record that shows the state court ignored any evidence or overlooked any evidence. It certainly weighed the evidence differently, but there's nothing to show that the state court ignored any of the evidence. It's just me that we have here under Wiggins, the Supreme Court decision, where the state court just doesn't make certain findings that are supported by the evidence in the state court record. There's not anything to defer to. And so the district court just said, you know, the state court made very limited findings on only one of the issues presented and just was silent as to other issues presented. And so the district court was free to make review the state court record and make findings. And did you know any deference to findings that were not made? So, again, I have two responses to that. The first is that the state post-conviction court did not make a limited amount of findings on only one issue. The court had a thorough discussion of each of the claims that had been raised and discussed the facts that it deemed to be the highlighted the facts that it deemed to be the most dispositive of each of those claims. And the PCR court, the state court, a number of the things were express findings, but you can also evaluate the sort of implicit findings made by a state court decision. Now, in Oregon, we have a doctrine that says if you do not make express findings on each and every single piece of evidence, but in order to make a certain decision, you'd have to have credited some testimony or discredited other testimony, that we can presume that the court either credited or discredited that testimony. And that's what we're saying should have happened here. The district court basically credited all of Petitioner's post hoc assertions about what he was feeling on the day that he took his plea, what kinds of things he says that counsel told him on the day of his plea, none of which was corroborated by any other evidence, including the Petitioner's own mother, who supplied a very detailed declaration. She couldn't corroborate any of those claims. And in order for the state post-conviction court to reject Petitioner's ineffective claim on what was the properly pleaded claims, the court necessarily would have had to have found that those assertions were not credible. But the district court credited them. But the district court said that the state court did not even discuss the Petitioner's testimony regarding why he took the plea, because he was misled about whether or not the state court would accept the evidence of diminished capacity. So our position is that there is an implicit finding rejecting that testimony. Where is that in the record? Yes. Throughout the PCR of court's opinion, there are numerous ñ Well, that's not helpful to say throughout the opinion. I'll tell you. Tell us where we can go in the record where the state court discussed the Petitioner's testimony that he was told that the court would not accept the evidence regarding diminished capacity, that neither the DA nor the state was receptive to the presentation of evidence regarding diminished capacity, and that's why he accepted the plea. So tell me where precisely in the record that's discussed by the state court. It is not explicitly cited by the post-conviction court, and I think that's where a lot of the issues come in here. However, there are plenty of other findings by the court that would be inconsistent. Which ones precisely? So in the very first paragraph under conclusions of law, the post-conviction court says that Petitioner failed to prove that ñ sorry, give me one second. I have to read through this ñ that his attorney failed to spend the necessary time reviewing his case and that there's any additional information that his attorney should have discussed before the plea offer. He then talks about how the Petitioner's plea was knowing, voluntary, and intelligent, how counsel provided appropriate pre-plea advice. Now, that would not be appropriate plea advice, right, because that's not factually what the court would have said. And that Petitioner's mother, who was present during the discussions, did not indicate that anyone had pressured him or forced him to take the plea. All of these findings contradict Petitioner's testimony in the trial court. Not necessarily. They're just ñ they're just setting forth the evidence that the district court is relying on, the facts. Right. You know, it would be helpful if the district court actually laid out the facts. Sure. And then discussed them. And I think it was ñ the district court was within its authority to say that those were not specifically discussed because they weren't. Yes. I agree that it would be better had we had express, explicit findings of fact. I want to also point out that it's paragraph 5. It's at ñ where is my ñ paragraph 5 of the PCR court's decision. It says, he has not proven that his attorney failed to give him adequate advice prior to the plea, and that the advice was proper. To me, that is ñ that is ñ there's an implicit finding there that rejects any assertion that his attorney would have said something inappropriate at that point. And ultimately, you know, it's our position that the state court's decision should be read sort of in the same lens that the Oregon state court's review trial court decisions, that we understand that there are implicit findings and implicit credibility determinations that are made by Oregon trial courts, and that when applying deference to a state court decision, that the federal court should also sort of view the state courts within that lens. True. We give deference to state court findings when they are made. Right. Do you have any case that says we have to give deference to implicit findings? I do not. I'm urging you to do so in this case, but I don't have a case that says it. Our position is also that, you know, even given everything ñ I know my time's kind of running low, so I'm going to kind of quickly go through this. Even given everything that the district court found sort of weighed differently than the state court, that under Hill, petitioners still failed to prove that he would have taken this plea absent sort of those deficiencies that Obert had going into the plea, that he was unaware that his expert was not available on the day of trial. There's no indication that he had diminished capacity as top of mind when he was having the plea discussions with his mother and his attorney. The state made a renewed plea offer that allowed him to limit his sentencing exposure from 40 years down to the possibility of 18 and a half years, and that even somebody who has said, I want to go to trial, I want to go to trial, I want to go to trial, when they are given a new plea offer that is ñ drastically reduces their sentencing exposure, that it is fair for a petitioner to change his mind and take a plea and that he has pointed to no contemporaneous evidence that he did not want to do that on that date. But on the other hand, his testimony is that he wanted help. So 18 years in prison as opposed to help in a mental institution was not more attractive to him. And so the fact that the term was somewhat shortened, 18 years is still a long time, to go without the mental health treatment that he was focused on. So I'm not sure that that's an indication that he really pled guilty because he wanted the lesser time in incarceration. There was no legal possibility that he was going to get the help that he thinks he was going to get? No attorney told him he would get the help? Correcto. He has to just show that he had the subjective intent to go to trial. And he would not have but for counseling. Our position is he did not do that. He had a post hoc assertion of that. There's no contemporaneous evidence. No attorney's own notes reflect that he was ready to go to trial and that he wanted to go to trial and that he had to represent that they didn't want to hear his incompetence defense. Right. There are zero notes from his attorney that he wanted to get help from a state mental health hospital and that he could have received that after trial or after his plea. He was not guilty except for in saying that was a legal impossibility. There is a record that the prior attorney worked up the diminished capacity defense and was prepared to present it at trial. I think I need to clear up that. Diminished capacity, A, is not a true defense. It's an evidentiary rule. And, B, it does not enable a person to go to the state hospital after being convicted. Understood. But that's what was in his mind. Defendants all the time hope against hope that they will be able to convince one juror or before sentencing that the defendant is entitled to direct his defense. That's correct. The attorney does not have the right to curtail a defense that the defendant genuinely wants. Right. And that's the problem with this case. If the defendant said he genuinely wanted to go to trial and try to prove diminished capacity, whatever the outcome would be, he's entitled to do that. All I'm saying is that there's nothing in the record apart from defendant's own much later assertions that he believed he could go to a state court hospital to receive treatment. No attorney told him that was a possibility. There's no evidence that that was what he was thinking at the time he took his plea. And that all the evidence about the diminished capacity defense, as we're Before he was given a renewed plea offer, before he got in front of a state court judge and said, I want to take the plea. No one is pressuring me to plead guilty. I'm here to accept the state's renewed plea offer. But wasn't he told, doesn't he say that he was told by his attorney that neither the judge nor the DA would allow the testimony of Dr. Gordon? That's what he says. Nothing corroborated that. And our position is that the state. It doesn't have to be corroborated for purposes of our proceeding here. No corroboration is required. If you would like to believe that without corroboration, that's the prerogative of the state court. We submit the state court didn't believe it. Counsel, that's a little bit disrespectful. No, I'm sorry. No, I'm sorry. That's not what I meant to say. That's not what we want to believe. It's what the record is. I meant to say what the courts, like the state court, could believe it or could not believe it. And that's what their job is in rendering a post-conviction case. Our position is that the state court didn't believe it. But if that problem is there, then you have nothing in the state court decision addressing it. Right. We believe it's implied in the state court's decision. Thank you. All right. Thank you, Counsel. You've exceeded your time, but we'll give you one minute for rebuttal. Good morning, Your Honors. May it please the Court. Nell Brown for the petitioner. Mr. Weaver. I think I'll start with the fact that Weaver's post-conviction testimony, that he did want a trial and only changed his mind on the morning of trial when his attorney told him his defense wasn't available, is corroborated. It's corroborated by Howell's preparation. It's corroborated by Obert's notes from that morning. Obert presented Mr. Weaver with a 25-year offer, and his notes reflect that Weaver, without question, still wanted to go to trial that morning. He used the word still wants trial to reflect that Weaver had long wanted a trial. Weaver's mother, contrary to what the state asserts, does corroborate Weaver's PCR testimony. She says that Weaver had not received much communication from Obert and that had caused him lack of confidence in Obert's ability to prepare the trial. And the circumstances, Obert's lack of preparation, which we know he was not prepared because he didn't subpoena Gordon, couldn't have put on that defense that day. So we know Obert had to tell Weaver his defense wasn't available that day. It would have been malpractice not to because, in fact, Obert couldn't put that defense on that day. So whether he said it was because the judge and DA didn't want to hear it or he was just saying, I'm not prepared, the fact is the defense wasn't available and Obert had to and did indicate that to Weaver as Weaver's PCR testimony indicates. On the AEDPA issue, Your Honor cited the Wiggins case. I'm not following you. Why wasn't Dr. Gordon's testimony available if he had been subpoenaed? He had not been subpoenaed by Obert. Obert hadn't ever contacted him at all, and the record is clear that he did not subpoena. In fact, the state court found that that was ineffective assistance on the part of Obert to not subpoena Gordon. So the defense could not be presented because the expert for the battle of the experts was not there. On the point about the AEDPA, Taylor v. Maddox is this Court's main decision on 2254-D2, where the state court is silent and the record is provative of a material question under the federal analysis. That D2 does not allow deference to that state court's silence. This court can fill the blank, can fill the void with facts. In Taylor v. Maddox, it was a question of whether, a Miranda question, had the defendant invoked his right to counsel, and the state court was silent on whether there was an invocation. The federal court, this court in Maddox, went ahead and said, yes, under the record before the state court, it's clear he did invoke. Can you address state counsel's argument that these were implied findings by the state courts, essentially, like, met a conclusion that there was no ineffective by failure to advise or misadvise? Well, just as in Taylor, the court didn't have the opportunity to just implicitly address these things. It had to find contrary to the weight of the record, which said that Weaver had long wanted trial. He turned down a 15-year offer before trial. He turned down a 25-year offer the day of trial. He only took the plea. There's evidence in the record of all these things, that he only took the plea because his attorney told him his defense wasn't available, that Weaver and Obert had barely met and not communicated. Weaver had called Obert 62 times, and they'd only connected twice, possibly once, with his secretary, a total of under 20 minutes. They hadn't discussed the case. These are all things that are in the record that Judge Mossman found and that the state court was silent on. Also, that Weaver and Howell had prepared the defense, that they'd had an ongoing conversation. Howell was prepared to cross-examine the state's expert and felt there were weaknesses in his account. All of those things are facts that were clear from the record that Judge Mossman found because the state court was silent on them. I don't think there's any way to imply that all that evidence was rejected in the writing of the state court opinion here. Counsel, what's your response to opposing counsel's observation that no diminished capacity defense was available and there was no likelihood that he would be able to go to a mental hospital, so therefore there was no harm in failure to address these issues? The record here shows that Howell, Obert's first attorney who had discussed this defense with him, believed there was a chance of prevailing. It may not have been a great chance, but there was a chance. He, in the record at pages, let me find the citation for Howell's, ER 69 and 70, Howell had an opinion that there was a valid mental health defense that had a chance of prevailing. Howell explained that to Weaver, and when Weaver said he wanted to take that chance, however slim, Howell went ahead and prepared the defense. So Weaver wasn't making an irrational decision here. He was making a decision to proceed to the type of trial that Howell and he together had contemplated. It was a trial where basically they wouldn't contest the bad evidence that the state repeatedly cites in its brief, but instead would present mental health information so that the court would be able to look at that bad evidence through the lens of mental illness, hopefully putting Weaver in the best light. Whether or not he could actually have ended up in the state hospital really isn't material. He wanted to present that evidence of how these crimes were reflective of his mental illness, and that's very clear from what Howell says in his declaration and from the preparation that he provided. I'll briefly address a couple things on the equitable tolling point. The standard is clear error. On page 30 of my brief, I cite the standard of review. I cite the Crittenden v. Chappell case. It's this Court's decision on that, but the Anderson v. City of Bessemer is a Supreme Court case as well. And as Your Honor sort of suggested, there's really no ignoring that Judge Mossman made very thoughtful, factual findings here. After holding an evidentiary hearing on the tolling issue, Weaver testified at that hearing, and Judge Mossman questioned Weaver himself. The end of the inquiry is Mossman's questioning of the petitioner himself. And in his opinion at page 172 of the excerpt of record, Mossman credited Weaver's testimony and describes it as, quote, compelling. And then he made factual findings that Weaver did all he could under the circumstances and also that the tasks necessary to file the federal petition could not have been completed in the time period that remained after Obert used 10 months of the limitations period and Weaver promptly had filed his PCR petition. On the issue of the four years, Weaver under the AEDPA wasn't required to do any more than he did. What he did during those four years, and I don't think this is as clear from my brief as it should have been, he was working on his federal petition in a very real sense under the AEDPA. The AEDPA requires that he fairly present his federal claim to the state court, that he exhaust that federal claim in the state court, and that he develop the record for the federal claim in state court because under the AEDPA the state court record is the federal record. So the work he was doing with his attorneys to develop and exhaust the federal claim is exactly what AEDPA contemplates he will do during the period of statutory tolling. And then if you couple that with this court's analysis in Gibbs and Doe v. Busby, Gibbs v. Legrand, Doe v. Busby, those cases both say that a petitioner is not required to begin work on his federal petition until the state court case is completed. Doe specifically says a little bit more. It says while the person is still represented in state court and before the exhaustion process is completed, the petitioner is not required to do anything more than work on his state post-conviction case. And Gibbs specifically says that asking him to do more, including asking the petitioner to file a protective petition or to begin work earlier, is inappropriately raising the standard from reasonable diligence to maximum feasible diligence, and that's not okay. It would be asking him to do more than his attorney would have to do.  So here, of course, Weaver did actually go above and beyond what he was required to do because he did do some work aside from working on the state petition, both before the period of limitations began moving. He contacted my office, the federal defender, and got information about how to proceed, and my office told him the first thing you need to do is exhaust your claims, which is what he then did. And then after, toward the end of the PCR case, while the statute of limitations was still statutorily told, Weaver again contacted my office to get the forms that he needed to file federally. So he was already getting his ducks in a row before the period of statutory tolling ended. And then what Judge Mossman found, as a matter of fact, that this Court should defer to unless there's clear error, which there is not, is that Weaver then did all he could, both before, after, during the impediment, to move his case forward. What is the remedy you seek precisely? The remedy is a new trial, Mr. Weaver. Otherwise, this is a Pyrrhic victory unless he really wants trial. A new state trial. Correct. You want him to be able to withdraw his guilty plea. Withdraw his guilty plea and go back to square one in state trial court. Correct. I guess on the merits, I would add that the desire to go to trial was not irrational because it was supported by Howell's legwork is the word I believe Judge Mossman used. And the state's focus on the strength of the evidence is really not, it doesn't get to the heart of what Weaver wanted, which was to present this mental health lens so the court or the jury could look at his case through that lens. Irrationality issues. Is the case law clear that you needed to show irrationality under these circumstances when we're talking about just exercising the right to go to trial? I don't think so. I think it comes from Padilla v. Kentucky. It's not my understanding of the traditional Hill v. Lockhart test that it needs to be rational. It's the defendant's own subjective analysis. I think a component of rationality came into this case because that's how the state court viewed it. I don't think that's necessary, but even that court, this court doesn't really need to decide that legal issue because it was rational here. So you're saying we could assume without deciding that rationality? Correct. On causation, I would also just add that what Judge Mossman found is that because under the Smith case that Judge Beyer wrote, because Obert was diligent before, during, and after the impediment and still didn't have enough time doing everything he could and working as quickly as practicable under the circumstances, which included a restrictive prison setting and his own mental health and medical issues, because he did all that and still couldn't file on time, causation is established under Smith. Does the court have any other questions for me? It appears not. Thank you. Thank you, counsel. Let's have one minute for rebuttal. Thank you, Your Honors. I just want to begin by reminding the Court that the standard for overturning a plea that has been entered in state court based on ineffective counsel is a very high burden and that the Supreme Court has stated that in order to do so, a petitioner must demonstrate that he would not have accepted the plea absent some deficiency and that the decision to reject a plea bargain would be rational under the circumstances. I also want to use this time to just flesh out what diminished capacity really is. What that does is it allows a defendant to present mental health evidence solely for the purpose of negating the element of intent. So diminished capacity means I have some mental disorder that makes it impossible for me to form the necessary intent to commit the crimes. And the state court found that the evidence of that was incredibly weak and that it would not be rational to sort of throw the Hail Mary and put on that evidence in the face of a favorable plea deal that the petitioner accepted in open court on the record. And with that, I will ask that you reverse the district court's decision, either on the timeliness grounds or on the merits. Thank you. Thank you, counsel. Thank you to both counsel for your helpful arguments. The case, as argued, is submitted for decision by the court.
judges: RAWLINSON, BEA, SUNG